STATE OF MINNESOTA ex rel. EDWIN O. KEITH v. CHARLES E. CHAPEL, Sheriff.[1]

January 27, 1896.

Nos. 9869—(355).

| 63 | 535 |
|----|-----|
| 82 | 132 |
| 63 | 535 |
| 84 | 249 |
| 63 | 535 |
| 85 | 174 |

**Constitution—Title of Act—Game Law.**

> G. S. 1894, § 2171, making it a misdemeanor for any person to have in his possession, within this state, any game or fish which has been captured in or shipped out of any other state or country in violation of the laws thereof, is unconstitutional, because its subject-matter is not expressed in the title of the act whereof it is a part, as required by section 27, art. 4, of the state constitution.

Appeal by relator from an order of the district court for Ramsey county, Egan, J., denying his application for release from custody on writ of habeas corpus. Reversed.

*Akers & Williams*, for appellant.

*Pierce Butler*, and *Wm. Ely Bramhall*, Attorney for Board of Game and Fish Commissioners, for respondent.

START, C. J. The relator was convicted, in a justice's court of the county of Ramsey, under the provisions of G. S. 1894, § 2171, upon a complaint charging him with unlawfully having in his possession one prairie chicken, which had been taken in and shipped out of the state of North Dakota, in violation of the laws thereof. His sentence was imprisonment in the jail of Ramsey county for 10 days, and he was accordingly committed to the custody of the respondent as sheriff of the county. The case comes to this court upon appeal by him from an order of the district court of Ramsey county denying his petition to be released from such custody on a writ of habeas corpus. The validity of the statute under which the relator was convicted is the only question for our decision.

The original of the statute is Laws 1893, c. 124, § 21, the here material part of which is as follows: "No person at any time shall have in possession or under control any bird, animal or fish which has been caught, taken or killed outside of this state which

[1] Reported in 65 N. W. 940.

was caught, taken or killed at a time, in a manner, or for a purpose forbidden by the laws of the state, territory or country where the same was caught, taken or killed, or which was shipped out of said state, territory or country in violation of the laws thereof." The relator claims that this statute is unconstitutional, because its subject-matter is not expressed in the title of the act of which it is a part, as required by section 27, art. 4, of the state constitution, which is in these words: "No law shall embrace more than one subject, which shall be expressed in its title."

This constitutional provision must be liberally construed. "The insertion in a law of matters which may not be verbally indicated by the title, if suggested by it, or connected with, or proper to the more full accomplishment of, the object so indicated, is held to be in accordance with its spirit; but a more liberal construction cannot be given without letting in the evils which the provision was intended to exclude." State v. Kinsella, 14 Minn. 395 (524). This rule has been repeatedly approved by this court.

If, then, the provisions of the statute in question are connected with the title of the act, which is "An act to amend an act for the preservation, propagation and protection of the game and fish of the state of Minnesota, approved April 20, 1891" (Laws 1893, c. 124), or if they in any reasonable manner tend to the accomplishment of the object so expressed in the title, the statute is constitutional; otherwise, not. If this statute tends in any reasonable degree to protect the game and fish of this state, it is germane to the title, and is valid, for the necessity or propriety of such a regulation is a question within the exclusive jurisdiction of the legislature. State v. Rodman, 58 Minn. 393, 59 N. W. 1100; State v. Mrozinski, 59 Minn. 465, 61 N. W. 560. But do the provisions of the statute tend in any degree to preserve the game and fish of this state? Does the statute on its face indicate any such purpose? We answer these questions in the negative. The object of the statute, as unequivocally expressed on its face, is to protect the game and fish of other states and countries, by refusing to the violators of the game laws of such states and countries a cover and market for game or fish secured by such violation. We are not to be understood as holding that the legislature might not, as a matter of state comity, enact such a statute, under an appropriate title; but what

we do hold is that the purpose to enact such a law is not expressed in, or in any manner connected with, the title of this statute. This statute relates exclusively to foreign game, while the subject with which its title deals is the protection of the game of Minnesota. No lawyer or layman can place the statute and its title side by side without being at once struck by the radical discrepancy between them.

It is, however, claimed by counsel for respondent that the provisions of this statute prevent evasions of our game laws, and facilitate the detection and punishment of persons violating such laws, and therefore the statute tends in a greater or less degree to protect the game of Minnesota. If the premise of the argument is correct, the conclusion is also. This statute is not limited to the closed season in this state, but it is a misdemeanor for any person to have in his possession, at any time, any game or fish taken in or brought from any other state contrary to its laws. If the prohibition was limited to the closed season in this state, and applied to all foreign game, then the tendency would be to prevent evasions of our game laws, and to protect Minnesota game; but to exclude foreign game from the state during our open season, when it is perfectly lawful to take, have, and possess Minnesota game, only increases the demand for the latter, and tends to its extinction, instead of its preservation. If the importation of all foreign game was prohibited during the closed season only, it might be claimed with reason that the statute was for the protection of the game of this state. But it is only the game and fish which have been taken in and brought out of some other state in violation of its laws that it is unlawful for a person to have in his possession in this state; he may lawfully have in his possession game to any amount he chooses if it has been taken in or brought from other states and countries without a violation of their laws. It is obvious on the face of this statute that its provisions cannot have, and were not intended to have, any tendency to protect the game of this state, but that its purpose, tendency, and subject-matter are the protection of the game of other states. Such being the case, the subject of the statute is not expressed in its title, within the rule we have stated.

Order reversed, and the relator discharged.