### BERT WALDO v. JAMES F. GOULD.[1]

November 20, 1925.

No. 24,855.

**When shipment of furs by common carrier is subject to seizure and confiscation.**

1. The statute relating to wild animals recognizes no property rights in such animals except as authorized by the act; and prohibits taking, possessing or transporting protected animals or any part thereof except during the time specified therein; and prohibits transporting such animals or any parts thereeof, inclosed in covered packages, by common carrier, unless a statement showing the contents of each package is attached to the outside thereof. It authorizes the seizure and confiscation of such animals or any parts thereof taken, had in possession or transported in violation of any of the provisions of the act. It also provides that nothing in the act shall be construed to prevent the possession and shipment of furs and hides at any time, upon proof that they were lawfully taken. *Held* that shipping furs in covered packages by common carrier without attaching a statement showing the contents of the packages to the outside thereof was a violation of the statute and rendered the shipment subject to seizure and confiscation.

**Defendant not liable in damages for seizure of furs.**

2. Plaintiff's shipments having been made in covered packages by common carrier without attaching to the outside of such packages a statement showing the contents thereof, they were lawfully seized and plaintiff cannot maintain an action for damages resulting from such seizure.

See Game, 27 C. J. p. 942, § 2; p. 952, § 16; p. 958, § 28.

[1]Reported in 206 N. W. 46.

Action transferred to the district court for Hennepin county to recover for the seizure and retention of a quantity of raw furs. The case was tried before Leary, J., and a jury which returned a verdict in favor of plaintiff. Defendant appealed from an order denying his motion for judgment notwithstanding the verdict or for a new trial. Reversed.

*Clifford L. Hilton*, Attorney General, and *Rollin L. Smith*, Assistant Attorney General, for appellant.

*W. B. Mitton* and *Sam J. Levy*, for respondent.

TAYLOR, C.

Defendant is the game and fish commissioner of the state of Minnesota, and as such is charged with the duty of enforcing the laws relating to wild animals. Plaintiff, a licensed fur-buyer, shipped two lots of raw or undressed skins of fur-bearing animals from Browns Valley, Minnesota, to Becker Brothers at Chicago, Illinois, in January, 1924. They were seized by game wardens in the city of St. Paul while in the possession of the American Express Company. The skins, or the greater part of them, were thereafter returned to the carrier and forwarded to Becker Brothers. Plaintiff, claiming that the seizure was unlawful; that a part of the skins had not been returned; that a part of those returned had been returned in a damaged condition, and that he had wrongfully been compelled to pay a charge for treating or tanning certain of the skins in order to obtain their return, brought this action against defendant for damages and obtained a verdict. Defendant appeals from an order denying his alternative motion for judgment notwithstanding the verdict or for a new trial.

Defendant contends: (1) That the furs were contraband, and subject to seizure and confiscation; (2) that he is not liable in damages to plaintiff for the torts of the game wardens.

The laws relating to wild animals were revised and codified by chapter 400, p. 427, of the Laws of 1919, and, with a few amend-

ments made in 1921 and 1923, appear as chapter 32 of the General Statutes of 1923, comprising sections 5495 to 5655, both inclusive, of that compilation. The statute is broad, sweeping and drastic. We shall refer to only a few of its provisions.

In section 5496, it declares that the ownership of wild animals rests in the state for the benefit of all its people in common. In section 5497, it declares that no person shall acquire any property in any wild animal in this state except as authorized by the act and prohibits taking, having in possession or transporting any wild animal protected by law, or any part thereof, except as permitted by the act. In section 5503, it prohibits having in possession in this state any wild animal caught, taken or killed outside this state at a time when it is unlawful to have such animal in possession if caught, taken or killed in this state, or which has been unlawfully caught, taken or killed outside this state, except as provided in sections 5534 and 5547 (sections 40 and 53 of the original act).

In section 5504, it prohibits transporting any wild animal or part thereof taken in violation of law. In section 5507, it prohibits transporting by common carrier any wild quadruped or part thereof in any box, sack, or other covering unless a coupon tag and a statement showing the name, address and license number of the shipper and the name, number and kinds of wild animals or parts thereof contained therein is attached to the outside thereof, and authorizes any game warden to open and inspect any such package.

In section 5512, it makes the possession of wild animals, except during the time permitted by the act, presumptive evidence that they were unlawfully taken by the possessor unless the tag and seal of the commissioner is attached thereto as provided in the act. In section 5631, it authorizes the commissioner and the game wardens to seize and confiscate any wild animal or part thereof killed, transported or had in possession in violation of the act, and to open and examine any package in the possession of a common carrier which they have reason to believe contains contraband or is falsely labeled. In section 5649, defining the meaning of the words and phrases used in the act, it defines contraband to include any quad-

ruped or part thereof taken, transported or had in possession contrary to the provisions of the act. In section 5633, it provides that "confiscation of any part of a shipment shall include the entire shipment," and that where contraband articles are commingled with those not contraband, "the whole shipment or parcel shall be deemed contraband."

In divers sections it limits the time during which various kinds of animals may be taken, had in possession or transported. In section 5542, it provides that muskrats may be taken only between March 1 and April 30 following.

The shipments in question were made in January and contained a large number of muskrat skins, the taking of which at that season was prohibited in Minnesota. They also contained other skins which could be lawfully taken at that season. All the skins were packed and inclosed in sacks or other coverings, and it is conceded that no statement showing the contents thereof was attached to the outside of any of the packages. We do not understand plaintiff to contend that the seizures were illegal, if section 5507 requiring such statements to be attached to the outside of the packages applied to these shipments. But plaintiff contends that these shipments were excluded from the operation of that section by section 5547 (section 53 of the original act), which provides:

"Nothing in this act shall be construed as prohibiting the buying, shipping or having in possession at any time, of the skins of fur-bearing animals legally killed within or without the state, and of the hides of moose or deer legally killed within or without the state, upon proof that the hides were so taken. No person shall engage in the business of buying furs until he shall have procured a license so to do from the commissioner. * * * Such fur-buyers' licenses * * * may be revoked by the commissioner for any violation of the law relating to wild animals."

Plaintiff was a licensed fur-buyer. After the seizure he seems to have satisfied defendant that the muskrat skins had been lawfully taken in the state of South Dakota, and defendant directed that the shipments be returned to the carrier. But, if plaintiff was trans-

porting them in violation of the statute, they were contraband and plaintiff was not entitled to have them returned to him, and could not maintain an action for damages for failure to return them, for the law authorized and empowered defendant or any game warden to seize and confiscate them.

The statute was enacted as a police measure to protect and preserve useful or valuable wild animals for the benefit of the public. It is to be construed as a whole in the light of the obvious purpose intended to be accomplished, and so as to harmonize and give effect to all its parts if reasonably possible. 25 R. C. L. 1006, § 247; State ex rel. v. District Court, 134 Minn. 131, 158 N. W. 798. In construing the statute we must bear in mind that it is not dealing with pre-existing property rights. It declares that no property rights exist in wild animals in this state except as permitted by the act, and that such rights as are permitted by the act are forfeited by any violation of its provisions. That the legislature may thus limit and restrict the rights in wild animals permitted in this state, whether they are taken here or elsewhere, is beyond question. State v. Rodman, 58 Minn. 393, 59 N. W. 1098; State v. Shattuck, 96 Minn. 45, 104 N. W. 719, 6 Ann. Cas. 934; New York ex rel. Silz v. Hesterberg, 211 U. S. 31, 29 Sup. Ct. 10, 53 L. ed. 75.

The taking of wild animals, or the possession or transportation of such animals or of any part thereof, is made unlawful except during specified brief periods. The legislature recognized that furs and hides ought to be excepted from these limitations of the time during which wild animals or parts thereof could be transported or had in possession, and provided that furs and hides might be bought, shipped and had in possession at any time, upon proof that they had been lawfully taken. To aid in preventing evasions of the law and in enforcing it effectually, shipments by common carrier inclosed in boxes, sacks or other coverings are forbidden, unless a statement showing the contents of each package is attached to the outside thereof. This merely regulates the manner in which shipment may be made. We see no inconsistency, at least none of substance, between section 5507 and section 5547, and no reason why

they may not operate in harmony and both be given full effect in accomplishing the legislative purpose. We find nothing in the statute which will justify us in saying that the provisions of section 5507, requiring each package to disclose its contents by a statement attached to the outside thereof, do not apply to shipments of furs and hides. That the legislature intended that all the provisions of the statute should apply to fur-buyers, is shown by the fact that it authorizes the revocation of their licenses, "for any violation of the laws relating to wild animals."

It is conceded that the requirements of section 5507 were not complied with in making the shipments in question, and it follows that they were made in violation of law and, by the express terms of the act, were subject to seizure and confiscation.

Plaintiff seems to claim that the seizures were made solely because the packages contained muskrat skins, the taking of which in Minnesota was unlawful at that time. But the warden who made the seizures states that he made them because the packages did not show what they contained. The seizure having been lawful, the fact that defendant offered to release the shipments on proof that the muskrat skins had been lawfully taken outside the state, and on receiving such proof did release them, did not make the seizure illegal nor vest in plaintiff any property rights upon which he could predicate an action for damages growing out of the seizure or of the failure to return the furs or of the conditions with which he complied in order to have them returned.

The conclusion we have reached on this phase of the case renders a consideration of the other question raised unnecessary.

We cannot pass unnoticed the unseemly and unwarranted attack upon the character and conduct of defendant contained in the concluding sixth paragraph of plaintiff's brief and the portion of the brief containing that paragraph will be stricken from the files as scandalous.

The order appealed from is reversed and judgment directed for defendant.